Ladies and gentlemen, please rise for the final roll of the telecourt of the 3rd Judicial District of the State of Illinois. And now in session, the Honorable Mary Kay O'Brien. Be seated, everyone. Good morning. Could the clerk call the first case, please? 322-0406, Morgan's Orchard Lake Homeowners' Association. I, Callan Liddy Vassner, v. Michael Morgan, faculty by Orchard. 0, seated. All right, Ms. Vassner, if you're ready to proceed. Good morning, and may it please the Court. My name is Liddy Vassner, and I represent the plaintiff in this case, Morgan's Orchard Lake Homeowners' Association. Your Honors, Morgan's Orchard is entitled to judgment in this case for assessments that were levied against the defendant. Those assessments were properly adopted, set and adopted by the Board of Morgan's Orchard Lake. They were properly set and adopted pursuant to the declaration. And if we assume an argumento that the declaration does not state that, they were properly set and adopted by the Common Interest Community Association Act, or CICA. We'll show this by showing you that if we look at the declaration as a whole, look at the plain and ordinary language, and don't make any provision, let alone the entire contract, null and meaningless, the declaration states that the Board sets the assessments, adopts the assessments, and levies those assessments. Additionally, under the Common Interest Community Association Act, if we look at the entire statute as a whole, plain and ordinary language, and make nothing null and meaningless, again we find that this says that the Board of an association sets the assessments and levies those assessments. Therefore, we would ask this Court to review the case de novo and reverse the trial court's ruling of December 6, 2021, and the subsequent judgment of December 7, 2021. As to my first argument, the declaration, if we just focus initially on the provision that the trial court also focused on, which describes exactly how the assessments are set, that paragraph starts out stating, the amount of the assessment shall be determined by the voting members. Now, if we just stop there, that would seem to be obvious, that the voting members set the assessment, but it doesn't stop there. It goes on to state that the amount of the assessment shall in no case be less than the amount determined by the Board necessary to defray all costs and expenses. So here we see, if we look at the entire thing as a whole, that yes, the voting members have and can choose to have a say in making the assessment higher, but the Board sets the minimum. The Board sets the assessment. It is their responsibility to set it in order to defray all of the costs and expenses that they are responsible for. We can contrast this with the special assessment section that's on the next page. That section states that the association may levy in any assessment year a special assessment for an extraordinary expense, provided that that assessment has the assent of the voting members. This is different, we can see, obviously, from the regular assessment sections, which makes sense. Special assessments are special. They're for extraordinary expenses. They are outside of the budget, outside of the minimum responsibilities of the Board. Therefore, voting members' participation in deciding whether there should be a special assessment in the first place makes sense and is said in that section. They must approve it. In the regular assessment section, however, it's the opposite. The Board sets the minimum, states exactly what it should be, and then the voting members can come in and make it higher if they'd like. If we continue to look at the declaration as a complete whole, we see that it states that the association is administered by the Board. They have responsibilities such as maintenance, repair, paying taxes, things like that, all things that need to be funded. That funding doesn't come from anywhere. It has to come from assessments that are levied against the members. If we are to take the defendant's interpretation as true, that the members are the ones that set the assessments, and the members choose not to, just as they did here, then no assessment is set, no budget can be adopted, no funding can be had, no maintenance or repair can be done, and the Board can't fulfill its duties, and the association may as well not be there. It can't do anything. So their interpretation would cause a... How, Ms. Fassberg, is that the case if they're permitted to vote on it? I mean, why would the cataclysmic result be such as you said? They vote, they get outvoted, the budget, the assessment, the expenses, the financial statement, everything goes forward. And what if they choose not to vote? That's the... You've got five members out of the nine homeowners' lots that are on the Board. If they choose not to vote, you've got five people at the meeting who outvote them. True, but the declaration does not state the Board. They would have to be voting as members, correct? And that would be assuming that all five would come to that meeting. There is a very real possibility, which is what happened here, that the members don't vote. That even though there are a quorum of Board members, that there are not enough members to vote. They would have to be voting as members, not as Board members. None of that occurred. So if we assume that what the Board did here, which is setting the assessments, doesn't matter, and the members would then have to have a separate vote, they didn't do that here. They chose not to, then everything stops. There is no other option. So although it may seem drastic, it's exactly what would have happened here, because the members chose not to do... not to not just vote, but not to vote to make it higher. That is the only right that they have for regular assessments, because the Board sets the minimum. They can come in and say, well... If they voted and they voted against the proposed budget and the proposed assessment, and they carried the day at the annual meeting, wouldn't they go back to the Board to reassess wherever they were? I would argue that they have the right, if the Board voted on a minimum, that that minimum stays, according to the wording of this declaration, that they have the right to set that minimum. If there were a majority vote that didn't approve the proposed budget and assessment, wouldn't it go back to the Board? I mean, there wouldn't be a minimum established. Are you saying that the members... Right. If the members voted and they didn't accept the proposed assessment and the proposed budget, it would have to go back to the Board, wouldn't it? Or re-presentation? Re-calculation? My argument is no, because the assessment that they would be voting on would not be proposed. It would be the minimum assessment. Now, whether the budget is adopted is, again, another separate vote. But my argument is not... It is not proposed when it goes to the members. This is what we agreed as to the minimum. If you want to vote, you can make it higher if you need to. Because the Board has all of the duty, right? They, as volunteers, are putting themselves out there. The possibility of being sued for breach of fiduciary duty if they don't do their job. So they have the right and the duty to set that minimum in order to meet all of their responsibilities under the Declaration. Now, turning to the Common Interest Community Association Act, this is obviously assuming, in arguendo, that the Declaration does not follow our interpretation, but instead says that the members are the ones that set the assessment. We'd argue that SECA invalidates that provision. The reason is, if we look at the statute as a whole, it is set up very similar to the Declaration. The Association acts through the Board. The duties of the Association are maintenance, repair, and replacement. The Board has the power and duty to assess the expenses for all of those responsibilities. The Board has the power to propose the budget, send the budget, adopt the budget, keep record of the budget, and provide a report the following year of that budget. All of these things follow that the Board is the one that sets that assessment. Because, again, they have to administer the Association. They have to provide for the maintenance and repair. They have to collect and levy the assessments. They have all of the responsibilities here. So if we, again, take that and take a specific provision out of SECA, the separate assessment provision, again, very similar to the Declaration itself, in SECA it states that separate assessments for expenditures relating to emergencies may be adopted by the Board without being subject to member approval. This implies that separate assessments can have a provision that requires membership approval, just like our Declaration has here. A special assessment requires the assent of a certain amount of the voting members. Now, the trial court took this section of SECA, and instead of reading it as it states plainly that it's for separate assessments, they took that and expanded it to cover common expenses or regular assessments as well, to imply that, well, if this section says that, it must mean this. But as we know under Illinois law, you don't get to add provisions into a statute. You have to read it as is. And if one term is used here and another term used here, then they are meant to be different terms. They are meant to be separate. So the inclusion of the term separate assessments in this section was purposeful by the legislature. So while we agree that separate assessments can be subject to membership approval, we do not agree that that's true for regular assessments. There is nothing in SECA that allows that. Then we move on to having the same issue with SECA as we would with the Declaration, that if we allowed provisions like this where members could set the assessment, there is first one section of SECA that would become completely meaningless. There's a section that states if a budget adopted by the board would result in a sum of all the assessments to exceed 115 percent, the members can call a meeting to reject that budget. But if they're the ones setting the assessment, there's no reason for this provision to be in there because they're the ones that set it. Why would they need to call a meeting to then reject it? Additionally, again, we go back to looking at the entire statute as a whole. If the members are setting the assessment, then the board can't adopt their budget, can't do their responsibilities, can't fund their responsibilities. Therefore, there's no reason to have the board and no reason to have the association. So we would argue, Your Honors, that Morgan's Orchard, the board of Morgan's Orchard, properly set the assessments, adopted the budget, and levied those assessments against Mr. Michael Morgan. We then proceeded not to pay them, and those assessments were properly set and adopted pursuant to the declaration and pursuant to the Common Interest Community Association Act. Ms. Casper, I have just one other question, just so I'm understanding you correctly. In your argument, is there a distinction between setting the assessment and voting on it? I mean, there isn't in your position. Correct. Okay. Yes. Thank you.  Thank you. Any other questions from the panel?  Okay. Thank you, Ms. Casper. Thank you. Mr. Jarrus. Good morning, Your Honors. Good morning. May it please the Court, Arthur Jarrus on behalf of Defendant Michael C. Morgan. On a light note, although this is serious business, I never thought when I took this case that the state of Nebraska and the nature of its legislature would be an issue in the briefs. We will come to that shortly. Your Honors, I agree with opposing counsel that the declaration needs to be considered as a whole. I believe that's what Mr. Morgan's position, as I've argued it, has done. I believe that's what the circuit court rightly recognized. There is an importance that is overlooked by the plaintiff as to the significance of the voting members meeting. Because the board members are, as the Court knows, part of the membership, it's an interactive process between the entire membership and those who are the board members. There's a big assumption that is fallacious in the plaintiff's case, which is that the budget that the board did adopt was only the minimum necessary, as the declaration refers. That is, there's nothing in the record that indicates that the approved budget was the minimum. And this is the core problem. I'm going to come to this in order. I have ten quick points. Number one, there is no provision in the CICA that prohibits a declaration from reserving to the voting members approval of either regular or special assessments in general. And, in fact, counsel's reply brief at page five admits this, that there is no prohibition. So that the declaration, which didn't have to be drafted this way, it separates the budgeting function from the assessment function. And, in fact, denotes a specific article. Article 5 in the declaration is entitled assessments, whereas the budgeting process is in the prior article, Article 4, where it's clear that the board does set the budget. But Article 5 says assessments must be voted on, either regular or special, by the voting members at a meeting of the whole membership. So this happens to be a declaration where those two functions are not all left to the board. Some declarations could provide that both budgeting and assessments are left to the board. And, in that case, that's where Section 1-45C that counsel said we render meaningless comes into play. Because if the members, under their declaration, have no voting rights on the assessment, then 1-45C comes into play, which is that if the board skyrockets the assessment, in that case the statute protects all the members. But, in this case, we have a different declaration that vests the assessment power in the first instance in all the voting members. So it's not that 1-45C is rendered meaningless. It has its role. Its role is where the declaration does not give any voting rights to all the members, but instead vests the assessment power in the board alone. Point 2. The HOA's established practice until this dispute arose was to have had the voting members vote on the assessment mounts. And we point this out at our brief, of Helley's brief, page 10, site to the record, report of proceedings, pages 83 and 84. This dispute was triggered when the current board tried to change that practice, arrogating unto itself the assessment power and disregarding the plain language of the declaration. Point 3. There is no provision within the declaration that allows the board to make either regular or special assessments without a vote of the voting members taken at a meeting. That is the plain language of the declaration. Point 4. Instead, the declaration creates voting rights in the homeowners. Page 12 of the declaration refers to voting rights generally and gives them the right to vote on regular and special assessments. The vote on regular assessments is at page 17 of the declaration. Their right to vote on special assessments is at page 18. Now, I agree with counsel. The board can make a determination of the minimum amount necessary to operate the association on an annual basis, ordinary operating expenses, paying real estate taxes, and so forth. The board can do that, but there is no proof that what the board budgeted was that minimum amount. And why is this significant? It's significant because unless that's done, the members cannot be stuck with a budget that's greater than the minimum amount. Counsel argued to this Court a moment ago that what the budget was was the minimum amount. There is no proof of that. There's no proof that what the board budgeted was the minimum amount necessary. Mr. Barnes, what do you foresee happening if at the annual meeting the vote occurred and the proposed budget and the proposed assessment was voted down? So before there was a vote, there would be a discussion because that's what happens before a motion can be made and voted on. There has to be discussion. And the budget under the statute, which is Section 1-45A, the budget, interestingly enough, by statute, is supposed to segregate operating expenses from capital expenditures and real estate taxes and other items, which means the budget can have capital expenditure items in it. So during the discussion between the members who are board members and those who are not, the board would have to identify not only what part of the budget is for capital expenditures, which is subject to the special vote, and what part is for operations. The part that's for operations, the board would have to say, we, the board, believe the minimum necessary is X, but we've budgeted Y, something greater. Let me give you two simple examples to make my point, Your Honors. Let's say that in the budget is built in an amount to build an elaborate water fountain, to beautify the premises, so it's an extraordinary expense. Clearly, that's not part of the minimum amount necessary to operate, and it's subject to the special assessment voting provision that has a higher voting requirement. It's a different provision. So that's one thing. But let's say that just for operating expense, ordinary, the budget of the board has some elaborate flower gardens, which are more than necessary, that a less expensive flower garden could be provided for in the budget. That's the subject of dialogue between the board members and the rest of the members. Let's say the board members admit during the voting meeting that, well, yes, we agree that we could get by with less than what we budgeted. Well, in that case, their budget is more than the minimum amount necessary. So the voting members cannot vote for less than the true minimum, but the purpose of the voting meeting is to allow a discussion to really ferret out what is that minimum. So what happens, Mr. Jarrus, in the event of your second hypothetical? If the voting members did not do their duty to approve the true minimum ascertained at the meeting, then the outcome would be either for the board to come to court and get a declaration or to proceed unilaterally without a court declaration saying, we think now that we've had the voting meeting that the voting members acted illegally in not approving the minimum and we're going to insist that the members pay this amount. I don't know which outcome it would be, going to court or just proceeding unilaterally, but the point is that's not what happened here. There was no determination of minimum. There was no voting meeting. There was no dialogue with the members, including Mr. Morgan. So they were deprived of their say in determining what really is the minimum. And therein lies the problem. That's why we're before Your Honors. And that's why I think the circuit court, Judge McCluskey, got this right. He understood that you cannot deny the right to a meeting where this kind of discussion and action takes place. I hope I've answered the Court's question.  Thank you. Again, the HOA did not rebut Mr. Morgan's argument at page 11 of our brief that the plaintiff did not introduce any evidence that the budget was the minimum amount necessary. So I think there is a total proof failure. The point about Nebraska, reply brief page 5 of counsel, says that, well, really we're into a distinction between bicameral and unicameral legislatures in terms of my distinction between the budgeting process and the appropriation or assessment process. Well, I don't think that distinction holds merit. We know that Nebraska is the one state in the union with just one legislative house, but it still goes through the same distinction between budgeting, adopting a budget, and adopting tax assessments for its citizens. So I have to disagree with the argument of counsel on the nature of the structure of the legislature. At page 7 of the reply brief, it's argued that the provisions of the Act will always be trumped by the declaration if the Court accepts my argument. That's not our position. If I refer the Court to page 17 and 18 of our brief, we're not saying that if there is truly an emergency, which is one of the things that the statute covers, that the Board might not be able to act unilaterally. Because the statute says if there's a true emergency, and the statute says not any emergency, but it defines which emergencies. In that case, the statute says the Board can set assessments without vote of the whole numbers. That may be constitutional. It may not be constitutional. I'm not being dogmatic on that. So I'm not saying in that case that the declaration would necessarily trump the statute. That's for another day. But that's not the issue before this Court. There's no claim of emergency action. It's just the ordinary operation of the HOA. Also, point 9, there's a contradiction within the reply brief. As I've already noted, page 5 correctly admits there's nothing in the text of the Act that prohibits reserving to voting members the assessment power. But then at page 9, four pages ahead, the reply brief seems to say the opposite, to say that there is such a prohibition in the Act. Well, if there is a prohibition, let's hear the text. I can't find that text. I don't think it's there. Judge McCloskey in the Circuit Court correctly identified section 1-20 sub a of the Act as saying the declaration governs. Unless there's something specifically in the Act that contravenes and overrides it, the declaration governs. And Judge McCloskey took care to rightly interpret the plain words of the document. My tenth and final point, Your Honors, at page 10 of the reply brief, counsel raises what I think is a new argument, that Judge McCloskey should not have entertained our motion to reconsider. And the argument there is that we misused a motion to reconsider. On the theory of plaintiff motion to reconsider after a bench trial in a circuit court, limited to three specific grounds according to the plaintiff. But I showed in my circuit court reply brief, which is found at C-72 and 73 of the record, that that's not so. A motion to reconsider in a non-jury trial can be used for a sweeping range of purposes if the purpose is to allow the circuit court to determine whether any error was made in the initial ruling. And to Judge McCloskey's credit, he took our motion to reconsider, studied it carefully, and concluded that we were correct in our understanding of both the statute and the declaration. And therefore, he reversed his initial ruling and ruled in Mr. Morgan's favor. As a result, Your Honor, we ask that this court affirm the circuit court's protection of the contract rights of all of the members to vote on assessments per the declaration to which they bought into when they bought their units. Thank you, Your Honor. Any questions?  Ms. Fassberg, rebuttal. Good morning again, Your Honors. May it please the Court. Defendant seems to be arguing initially in his response that somehow the Board has control over the members and what they can do, that it was on the Board to force the members to have a meeting, to call that meeting for them, to do all of that. But that's not true. Within the declaration, there is a clear way for the members to call their own meeting. And there is nothing in the declaration that states that the Board has any responsibility to force the members to do that or to call the meeting for them. So the meeting could have been had. They had the ability to do that themselves. They were the ones that chose not to. Additionally, defendant seems to forgive also that this Board is not some random people off the street. They were elected by these members. So they represent their interests. And so what they're doing is based on a vote of all of these members already. Additionally, defendant points to a provision within the Common Interest Community Association Act, 1-20, and states, as well as the trial court states, that this is a default provision. That it states that if there is a contradiction between CICA and the declaration, that the default is to the declaration's wording and what it states. But this isn't true. If 1-20 was a default provision, then why does CICA go on in various other sections to state things like in 1-15, except to the extent otherwise provided by the declaration, the terms defined in Section 1-5? If 1-20 is an overall default, that any time there's a contradiction that we go to the declaration, why would they feel the need to include extra language in the statute to specifically for that section make it default to the declaration? The legislature wouldn't do that. Again, if we're looking at Illinois law, everything means something in a statute. Everything is done purposefully, at least that's the assumption. And so it's actually the opposite. If there's a contradiction, it defaults to CICA, not to the declaration, because there is no default provision. So given all of that, we would ask again that this court reverse the rulings of the trial court from December 6, 2021, and December 7, 2021, because Morgan's Orchard properly set the assessments, adopted their budget, and levied those assessments on Mr. Morgan, who then did not pay them, causing others to have to pay. Thank you. Any questions for Ms. Bassman? Thank you, Ms. Bassman. Thank you, Ms. Bassman. Thank you, counsel, for your arguments this morning and for your written briefs. The court will take the matter under advisement under written opinion.